Ready for argument in our first case, Ladda v. Berryhill, Mr. Duncan. Good morning. May it please the Court. Dana Duncan on behalf of Leon Ladda. At the alleged onset date of disability, which was November 9, 2011, Mr. Ladda was 51 years of age. His past work was found by the vocational expert and the ALJ to be at the medium exertional level with no transferable skills. What that means is that if he was found limited to sedentary work, given his age and the lack of previous work and or transferable skills, he would have been found disabled pursuant to the medical vocational guidelines at Rule 201.14. However, the judge limited him to light. The problem with this case is that, and I have outlined in the briefs, the two issues. The first issue is the pain analysis that outlined in this particular case. As this Court has said on multiple occasions, an ALJ has to show his work. And in this particular case, the ALJ did not show his work per se. The idea of a deferential standard, which applies in these cases, is not the volume of evidence that the ALJ cites in his decision, but it should be based on the logical conclusions that are drawn from the evidence. In this particular case, we have the fact that Mr. Ladda suffered multiple injuries in a scooter motor vehicle accident. In particular, he suffered fractures of three vertebrae in his lumbar spine. The osteophytes in his neck from a previous injury were broken or were cracked so that they were no longer solid. He suffered a fracture of the right wrist and he suffered a shattered left femur that required multiple screws and plates. And the ALJ's conclusion in assessing the pain analysis that he did was that he reviewed the record and he determined that the claimant both had an improvement in his nothing in the record which substantiates the level of pain Mr. Ladda indicated. Well, Dr. Zyrkowski stated on March 11th of 2011 in his assessment that the claimant was likely to have his problems caused by, and I'll quote it here, I believe his left leg symptoms are clearly related to the multiple fractures and pinning. Unfortunately, there is not a lot more we have to offer as we discussed with him today. Mr. counsel, the standard of review, your hurdle is a fairly high one because we don't get to that standard. In what specific way do you assert that the ALJ's credibility determination is infirm? Your Honor, basically my argument is the credibility determination is not afforded and the deferential standard is not given deference if the logical conclusions drawn from that are not clear or are erroneous. And in this particular case, what we're having here is the ALJ quite simply said two plus two equals five. He says that... You just quoted from one of the doctors. Tell me the doctor's name again, I'm sorry. It's Zerkowski. It's at record page 379. Fair enough. He had that opinion, but the record also suggests that other doctors had indicated that his injuries had in fact improved and that one orthopedist apparently suggested that he should be able to walk without crutches. I guess the point is there's conflicting evidence in the record from the medical providers. Isn't the ALJ entitled to reconcile that conflict? And he did so in this case against your client. So where does that leave you and your client? Judge, let me just put it this way quite distinctly. Let's assume that everything is correct and the judge was correct that Mr. Lotta was overstating his subjective symptoms. There still isn't anything logically here that indicates why the judge determined he was limited to light work and not sedentary work. And that's the difference between determining disability or not. But I'm trying not to conflate. What I'm trying to stay with in order to understand your argument is... Is your argument that the ALJ... What is your argument about the... Specifically, the infirmity of the credibility determination. If we could just stay with that for a moment. Sure. And I had understood... I had extrapolated from your brief that your argument was that the ALJ rejected the claimant's statements. The ALJ did not accept the self-reported pain. Is that not correct? Correct. And in fact, the judge, though, even made a statement, though, that has no bearing on the case. And I think I noted that in the brief. He said that there's nothing in this record to establish that Mr. Lotta could not perform any work. That's not the standard. And outlined in this case is... And that's where I guess I'm having the problem is, is why is it that he was not... Or why... According to the medical vocational guidelines, there's 1,900 jobs at the sedentary level that can be performed. And at age 51... Could you just stay with me on the credibility determination? Yep. And if I'm... If that's where this is going, then I apologize. I'm not understanding your response to be directed to that. What I'm trying to understand is your objection to the ALJ's credibility determination. Could we stay there for just a minute? All right. And what I'm saying is, is that what the judge did in this particular case is he analyzed the record and he found everything not credible. When in fact, even if he would have... It's not a burst of the bubble test. Okay? You still have to, if he's not credible, what part of the record is credible? And why is it that that part of the record that is credible would let the judge at least come to the conclusion that he's limited to sedentary work? That's the problem. We have, for example, he finds that he's not credible. He cites his daily activities that he cited. He cited that he could brush his hair, that he could shave, that he went to church, and that he went shopping. Even though going shopping, he testified to the fact that he used a motorized cart when he went to the store. Well, he also... Mr. Latta also reported that he could perform household chores and run simple errands. The ALJ explained the basis for his conclusion or his sense that Mr. Latta's statements about his daily activities showing that his claims about his limited movement were not entirely credible. The ALJ did not dismiss Mr. Latta's, the reports of Mr. Latta's pain. He simply did not find it corroborated, fully corroborated by the medical evidence. Is that, do you disagree with that? I do not. The problem though is, Judge, is that then you're left with the second part of that, which is, all right, if he doesn't believe the entire thing is credible, he's at least stated that a part was. And how did he arise, but how does he arrive at light as opposed to sedentary? Okay, so you don't, you're not taking issue with the negative credibility determination? Ultimately, this case wholly rests on the fact that the judge had to make or had to decide whether he was limited to light or sedentary work. And in order to do that, he had to get to a point where he had to find that he was not at all credible, or at least a large portion of his testimony was not credible. But didn't he have to do it on the basis of Mr. Latta's ability? He's limited by what his light work determination, isn't it limited to what Mr. Latta could or could not do? And the credibility determination, which I'm not quite sure how you overleap it, is that the medical testimony did not substantiate Mr. Latta's self-reported, Mr. Latta's own reports about pain. I mean, I'm just trying to get... But even if you say that the judge was correct, that Latta's testimony was not sufficiently credible to assess the level of pain, there at least was a portion of his testimony together, because the judge is supposed to look at the record as a whole, not just the testimony. And at least a portion of his testimony was sufficient to at least question when you have fractured leg with plates, you have all the other testimony. And why is it that you did not achieve or get to a point where this was a sedentary versus a light set of restrictions? So you don't contest the credibility, the extent to which the ALJ resolved the credibility determination against Mr. Latta? I do, Your Honor, but I don't think you even need to get to that point in order to reverse. That's what I'm saying. I think that there is enough problems... Is that the argument that you didn't do the function-by-function analysis? That is the second part of it. And yes, that's exactly the situation. Because even if you don't find in the first part that there's sufficient basis and that the judge's credibility is correct, there's nothing to support how he arrived at coming up with a light versus sedentary restriction. Didn't he pretty carefully in his analysis of this whole case follow this court's excellent and well-written opinion in the Mascio case? Thank you very much, Judge. You're welcome. And he pretty much... You're not going to disagree with that. No, I'm not. And I do. I've read the case as well as several other cases that I've enjoyed. And I cite the case about the standardized or showing your work in many courts across the country. I was particularly pleased about that. Yes, I did. And it's very similar to an argument I've raised, which as a former history tutor, you don't need to prove or have an actual point as long as you articulate sufficient support for it. But didn't he pretty much follow that opinion? He did. But the problem again is that, and I keep stressing this, deference does not mean just stating the facts. You have to draw rational, logical conclusions. And when you have, for example, as I point out, the daily activities issue that he raised, okay, that doesn't show that he actually did the function-by-function analysis properly. Moreover, he talks about in one paragraph that he has, that Latta failed to follow treatment. And then he talks about the fact that he has a limited financial ability. Well, he, okay. Now, I thought he did assess Latta's functional capacity. He discussed Latta's ability to sit, to stand, to walk. He explained that Latta's physicians opined that Latta did not need to rely on a cane or crutches. And one of your objections was that the functional capacity analysis didn't account for the crutches. But the ALJ discussed that. He assessed Latta's capacity to stand, walk, and lift, which are all functions that are related to those physical limitations. I'm just, and he explained, unlike the ALJ and Mascio, that Latta's pain would not prevent him from working for an entire workday and addressed conflicting evidence in the record. You're right. And in fact, at age 51, he could have performed 1,900 jobs that were sedentary and still been found disabled. The problem is, is that we don't even need to get to the issue of the crutches or the cane. If the judge would have found him limited to sedentary work, he would have been found disabled in that space. I believe your light is on. Yes. You have, did you reserve some time for rebuttal? I had reserved some time for rebuttal, but three minutes. But thank you. Morning, Your Honor. May it please the Court. My name is Christian Vineri, and I represent the appellee in this matter, the ACME Commissioner of Social Security. The ALJ's decision in this case should be affirmed because the ALJ did explain the reasons for his finding. And he did cite substantial evidence in support of those findings, exactly as is described in the match showcase that Judge Gibney brought up. It complied with the relevant standards of review, and it should be affirmed. I understand Mr. Latta's, Mr. Duncan's argument to be that there had to be something credible in Mr. Latta's testimony that the ALJ did not take into consideration. What I understand to be the crux of his argument is the distinction between sedentary and light work. Yes. And I'd be happy to talk about that. I mean, the issue for me was. I think that was the focus of it, because I think Mr. Duncan conceded that he didn't really disagree with the credibility determination. Sure. So maybe we could just go to that. Absolutely. That argument, I believe, fails just a matter of technicality. It reverses the burden of proof is the way it's supposed to go in these cases. You don't come in and ask the ALJ to assess this level of exertional work, but not that level of exertional work. The ALJ's role is to examine the entire medical record and other evidence in front of him, and then reach a conclusion and explain that conclusion by citing substantial evidence. It's not to say, well, this, you know, sedentary work doesn't apply here. Light work applies. And so it sort of flips the analysis on its head. In fact, I think it flips it on its head in a way that the Mashear decision would have taken issue with. It makes it's a little hard for me to understand how you over-leap the negative credibility determination. If you don't entirely believe, if you discredit Mr. Latta's symptoms, that that wouldn't impact the distinction between the ability to do sedentary work and the ability to do light work. I mean, it has to follow. I think it has to follow that the ALJ has to make an analysis of the subjective allegations. I don't think that analysis has to have a specific exertional level of work in mind as the ALJ is doing it. I think the subjective allegations are part of the analysis that goes into the decision. Well, I guess one of the concerns that I had about this case is whether or not the ALJ actually engaged with the subjective allegations of pain that the petitioner proffered in the record, because the tenor of the opinion seemed to me to always go back, ultimately, to the objective medical evidence in discounting his subjective allegations of pain, which clearly he's not supposed to do. I mean, you're supposed to consider the objective evidence, obviously, but not to the exclusion of the subjective allegations. And that's where I'm having a little bit of trouble. Can you help me with that? Absolutely. I think the issue with the subjective allegations, as you're describing it, the rule in this court is that you can't base your decision on subjective allegations solely on a lack of objective evidence to support those allegations. I don't think that's what we're faced with in this case. I think certainly there is some objective evidence, significant objective evidence, that the ALJ decided throughout the opinion that talks about how Mr. Latta's injury is healed. The X-ray evidence showed that the wrist injury is healed. The leg injury was well aligned and progressing well according to the doctors. But that's not the only basis for the ALJ's decision on the subjective allegations. He does talk about other issues. He talks about... Well, my concern about that is in some instances he talks about them, but I don't think he fairly characterizes the evidentiary record. So, for example, the issue of taking alternative treatments, the pain injections, the chiropractic treatment, the physical therapy options. In some of those instances, with respect to physical therapy, there was some question about whether or not the petitioner actually could pay for that treatment. With respect to the others, there's no evidence in the record to suggest that those treatments would actually have been helpful. So he seems to be making assumptions about those kinds of things. Another example is the issue of not smoking. Obviously, it's a good thing not to smoke, but I have some doubt as to whether or not there's any connection between his not smoking and the issues related to his pain as a result of the accident. It's those things that cause me concern about whether he was simply looking for a conclusion and then trying to fill in the gaps as opposed to the other way around. I don't think that's the case. Certainly, I don't think that the smoking cessation advice relates directly to Mr. Lata's injuries, but I think it's part of a larger pattern with the ALJ Identified where Mr. Lata was not complying with orders from his doctors. There are a half dozen or so treatment notes that immediately followed the car accident, one in December, January, March, and through the rest of 2012. And in almost every single one of those treatment notes, Mr. Lata is instructed not just to go to physical therapy, but there are also instances in those notes where he's instructed on home exercises, things he can do on his own without having to be able to afford physical therapy, without having to go to physical therapy, things he can do in his house. Just walk around your house. And then there's a treatment note, and I can't recall as I'm standing here if it's in June or September of 2012, nine months or a year or so after the accident, where it's clear he is not doing that. He says he's not doing that. He's not following his doctor's advice. And I think that's a very low threshold. To be able to walk around, the doctor feels like you're in a position where you need to get up and you need to get moving. And he's instructing you to just walk around your house. That will help you improve your condition. And he's not doing it. I'm sorry. I did. That's fine. I'm sorry. Did you finish your answer? I did. My impression was that the ALJ did engage with lattice self-reports of pain. That what he took issue with was the extent or the intensity of that pain. And he was fairly clear about linking the questions about the extent of that pain to documentation in the medical record as not being supportive of the intensity of the pain that Mr. Latta was reporting. Is that not correct? It is correct. I certainly would agree with that. I think he has tied his findings to the evidence in the record. Can you speak to that in a little more detail? Sure. If you open up the ALJ decision, there's evidence that I think he acknowledges the pain itself on multiple occasions. On page 25 of the record now, it's page 13 of the appendix, the undersigned has considered the claimant's complaints of pain. And then he goes on to a very lengthy paragraph. And again, on the next page, he talks about additional acknowledgement of the allegations of pain. I mean, the problem is, as I indicated earlier, he provides substantial reasons why the pain that inarguably exists. I mean, I don't think anybody's here arguing that Mr. Latta didn't experience a horrific accident. But it's not supported by other evidence on the record. And that includes, among other things, the objective evidence. It includes the comments made by his treating physicians that he needed to get up and get moving. And it includes his actions when he didn't take that advice to get up and move around. So it's certainly not that he's ignoring the allegations of pain entirely. But I would also urge that it's not the case that he's finding that he's not weighing the evidence more heavily because of the objective allegations. It's more than that. It goes beyond that. And I'd be happy to continue discussing that, or we could jump into the other issue again. Because the other problem that I think is presented with the issue about sedentary versus light work is that there's no evidence in the record, aside from Mr. Latta's allegations, that sedentary work should apply. There are two pieces of medical opinion evidence in the record from state agency consultants that reviewed Mr. Latta's records but didn't treat him. And both of those opinions said he was actually capable of medium work. So I think, Judge Duncan, that plays into your point again. The ALJ is not discounting these allegations of pain. In fact, he's finding, Mr. Latta, first of all, medium work is significant. That's much lower than heavy work. And light work is a step beneath that. So he's restricting Mr. Latta beyond what's stated in the only medical opinion evidence in the record. The only medical opinion evidence? Whose was this who said that he was capable of medium? These are the two state agency consultants that are in the record. This is not a treating source. Vocational sources? These are not vocational sources. These are medical professionals that work in state agencies and make disability determinations. I find that he was capable of medium work. They did, yes. And the judge rejected that aspect of the opinion in favor of a more restrictive residual function of light work. The other bit of medical evidence that Mr. Duncan raised in his presentation, I think, came from Dr. Zolosky. And I apologize that I don't remember his name either. But I think it's important in recognizing that that doctor did say there's really nothing we can do for Mr. Latta, that when you put that in context and you take a step back, that's a spinal specialist making that comment. That's not a leg specialist. That's not a wrist specialist. So for that doctor to say there's nothing we can do for him here comes as no surprise. He's a spinal doctor. And he does say that the symptoms Mr. Latta is reporting are related to his leg. They're not related to his back. And I'm a spinal doc. I don't treat those kinds of injuries. And that, I believe, was in March of 2012. And he subsequently went back and spoke more with his normal treating physician, who made those comments that I referenced earlier about being limited about physical therapy and getting around the house, things of that nature. Unless the court has anything further, I think I've touched upon everything I wanted to touch upon. Thank you. Thank you very much. Mr. Duncan, you reserved four minutes for? That's fine. No, no, no. That's not right. That's the last three. Yeah, I guess it was. And I'll be very, okay, I'll try to be very succinct if that's possible for a trial lawyer. But basically, the ALJ's findings, and he noted in his decision that he did not dispute that Mr. Latta had pain. The question is, is the extent or the nature of the pain? And what the judge's findings were was is that he could perform light work, which is defined by the regulations as being able to stand for six out of eight hours. And he supported that by citing the objective evidence that his leg was healing, which, as we well can assume, that just because a leg is healing does not mean that there was not complications, nerve damage, anything else that's there. Unfortunately, it would be nice if we had better medical records. But Mr. Latta lost his Medicaid and has lost his ability to get treatment for a period of time and ended up at a free clinic at the last part in 2013 where they tried to treat him. The records are very difficult to read, as the court is probably well aware, because they're in handwritten form. It took me several hours to go through and read them and have multiple people from my office try to decipher them. So again, that's a problem. But we have, so the judge has said the objective medical evidence, then he cites the lack of treatment, which he then in the next paragraph notes of lack of treatment is allegedly because of financial abilities. He also never made the requisite inquiry because when you're doing a pain analysis under SSR 96-7P, which is still applicable in this case, the judge is assigned the responsibility of specifically making inquiry about this stuff. He has to ask him, why didn't you get treatment? Did you not have financial means? What efforts did you do to make them? And if he doesn't, he's not allowed to use that adversely. Even if he couldn't do that, then what about the refusal to abide by the home treatment modalities that he was offered? I don't know that there was anything in the record that asked him about it. There are treatment notes, but the problem is, again, the judge in that ruling, SSR 96-7P, they have a whole list of things when you're assessing credibility. And you're supposed, the ALJ is supposed to make inquiry as to anything that could potentially be used adversely on issues of credibility. If he doesn't ask, he's not supposed to use it. So the claimant has no burden of bringing forward contrary evidence? What is his attorney? Okay, and judge, let me just point out one thing. I handle hundreds of hearings a year. They're an hour. If I had to go through a 6 to 1,200 page medical record and look for every potential credibility issue, I would have to have four hour hearings. That's why the burden is put on the ALJ to go, you've reviewed the record and you see what you think is a problem with credibility. It behooves you to make that assertion in there. And what we're trying to determine is whether or not that's supported. And it is, there are treatment notes that support it. I'm sorry, I'm not quite following your argument here. Okay, but Judge Diaz asked specifically about his home treatment. And he mentioned that he should do it. We have no information from this record how much effort he did to home treatment. It makes reference that he was supposed to do it, that he attempted a few occasions. We don't know because the judge never asked. But yet he used that adversely against the claimant. And he couldn't unless he actually developed the record on that issue. So again, I'm out of time. So thank you. Thank you. Thank you very much, Mr. Duncan. We appreciate it. We will come down and greet counsel and then go directly to the next case. Thank you.
judges: Allyson K. Duncan, Albert Diaz, John A. Gibney Jr.